## UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| TAREK EL-GHAZAWI, Ph.D., and THINKING LIGHTS LLC, a Virginia limited liability company, <br><br>     *Plaintiffs*, <br><br> v. <br><br> OPTELLIGENCE LLC, a Delaware limited liability company, VOLKER J. SORGER, Ph.D., HAMID DALIR, Ph.D., and BHEROUZ MOVAHHED NOURI, <br><br>     *Defendants*. | Civil Action No. _____ |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Tarek El-Ghazawi, Ph.D., and Thinking Lights LLC, a Virginia limited liability company, by their attorney, file this Complaint jointly and severally against Defendants Optelligence, LLC, a Texas limited liability company, Volker J. Sorger, Ph.D., Hamid Dalir, Ph.D. and Bherouz Movahhed Nouri, and in support thereof aver and allege as follows:

## PARTIES

1. Thinking Lights LLC ("Thinking Lights") is a Virginia limited liability company, formed in or about June 2019 by Plaintiff El-Ghazawi and Defendant Sorger, with its principal place of business in Great Falls, Virginia.

2. Tarek El-Ghazawi, Ph.D. ("Dr. El-Ghazawi"), a tenured professor at The George Washington University ("GWU") School of Engineering & Applied Science in Washington, D.C, is a Virginia resident and has served as a manager of and the CEO of Thinking Lights since its formation.

3.      Defendant Optelligence LLC ("Optelligence") is a Delaware limited liability company with its headquarters and principal place of business at 111 Congress Ave., Austin, TX 78701. Optelligence may be served via its registered agent, United States Corporation Agents, Inc., 651 N. Broad Street, Suite 201, Middletown, DE 19709. Defendants Sorger, Dalir and Movahhed Nouri are all former colleagues of Dr. El-Ghazawi and significant members, *i.e.,* equity owners, of Optelligence.

4.      Defendant Volker J. Sorger, Ph.D. ("Dr. Sorger"), was a professor at GWU and Dr. El-Ghazawi's partner in and a manager of Thinking Lights until 2020. Thereafter and at least until recently, Dr. Sorger was an employee of and equity holder in Optelligence with titles of President and Founder. On information and belief, Dr. Sorger is presently a Florida resident and may be served at 2223 NW 23rd Terrace, Gainesville, FL 32605-3839.

5.      Defendant Hamid Dalir, Ph.D. ("Dr. Dalir") is a former GWU professor familiar with the structure, purpose and business plan of Thinking Lights and, at least until recently, the president and CEO of Optelligence. On information and belief, Dr. Dalir is presently a Florida resident and may be served at 13913 NW 9th Lane, Newberry, FL 32669-3771.

6.      Defendant Bherouz Movahhed Nouri ("Movahhed") is a substantial investor in Optelligence familiar with the structure, purpose and business plan of Thinking Lights and, at least until recently, the CTO of Optelligence. On information and belief, Movahhed is presently a Texas resident and may be served at 3409 Winter Wren Way, Pflugerville, TX 78660-7875.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) based on diversity of citizenship and an amount in controversy, exclusive of interest and costs, exceeding the sum or value of $75,000.00.

8. Venue is proper in that Plaintiffs reside and do business in this District and many of the acts and circumstances from which the claims in this case arise took place in Fairfax County, Virginia.

## FACTUAL ALLEGATIONS

9. Thinking Lights is a Virginia limited liability company, formed in 2019 (although conceived and conceptually developed earlier) by Plaintiff El-Ghazawi and Defendant Sorger to develop and commercialize photonic and nanophotonic computing technologies researched or invented by either or both of them, including by means of (a) venture and institutional capital investment, (b) SBIR (Small Business Innovation Research), STTR (Small Business Technology Transfer) and other R&D grants from the federal government, and (c) long-term product development research and design.

10. Dr. El-Ghazawi and Dr. Sorger mutually developed the Thinking Lights concept before 2019, first presenting the idea to and starting negotiations with GWU in 2018. As those discussions got closer to yielding a full agreement, the company was officially formed and registered with the Virginia State Corporations Commission.

11. Central to the business plan of Thinking Lights was the agreement of Dr. El-Ghazawi and Dr. Sorger that each would contribute all of their nano-photonic computing related ideas, research and protected intellectual property (*i.e.,* their invented patents, which were technically owned by GWU) in this subject matter area to the company, with an option to sell Thinking Lights, including the patents or a license to such technologies, if the startup company achieved a liquidity or exit event.

12. Thinking Lights, Dr. El-Ghazawi and Dr. Sorger later negotiated extensively with GWU officials at the university's Technology Commercialization Office in 2019 and 2020 with

respect to a proposed agreement for transferring ownership of or licensing some or all such patents to Thinking Lights.

13.     Unbeknownst to Dr. El-Ghazawi, Dr. Sorger secretly abandoned the Thinking Lights venture in 2020 to negotiate separately, for his own account, with GWU with respect to the photonic and nanophotonic patents he had invented. Dr. Sorger, Optelligence and GWU subsequently reached agreement, again without participation by or the knowledge of either Dr. El-Ghazawi or Thinking Lights, on essentially comparable terms as earlier proposed jointly by Dr. El-Ghazawi and Dr. Sorger.

14.     Dr. Sorger maintains via his website that he was the founder of Optelligence. Neither Dr. Sorger nor Optelligence, however, (a) presented the above-referenced business and funding opportunity to Thinking Lights or to Dr. El-Ghazawi and (b) did not seek or receive the consent of Thinking Lights to pursue any sort of funding or other business relationship with Optelligence, with Defendant Movahhed, a principal Optelligence investor, or with MDD Investments LP, an Austin-based, private investment firm controlled by Optelligence advisory board member Francisco Conti, or any other potential investor. Neither Dr. Sorger nor Optelligence, moreover, disclosed that Optelligence was planning to and did apply for government funding grants, including STTR grants from the Department of Defense, for which it was awarded $4,132,586.00 in 2022 and $49,985.00 in 2021, and NASA, for which it was awarded $124,984.00 in 2021, all in the area of applied photonic computing.

15.     At or about year-end 2020, Optelligence and Movahhed reached agreement with GWU and Dr. Sorger to pursue funding opportunities and commercialize many of the same photonic and nanophotonic ideas, research and patents developed by Dr. El-Ghazawi and Dr. Sorger for which the two professors had earlier formed Thinking Lights.

16. Optelligence, Movahhed and Dr. Dalir each knew of and was familiar with the business plan of Thinking Lights and the related efforts by Dr. El-Ghazawi and Dr. Sorger to reach agreement with GWU. None of the Defendants offered either Thinking Lights or Dr. El-Ghazawi any compensation, by way of equity in Optelligence, cash payment or otherwise, in consideration of their usurping the GWU opportunity. Optelligence, Movahhed and Dr. Dalir intended for Dr. Sorger to breach his agreement with Thinking Lights and Dr. El-Ghazawi by, *inter alia,* transferring, assigning or licensing some or all of Dr. Sorger's applicable patents to Optelligence.

17. Optelligence was most recently valued at approximately $70 million, the majority of which is attributable to many of the same photonic and nanophotonic ideas, research and patents invented by Dr. Sorger for which he and Dr. El-Ghazawi had earlier formed Thinking Lights. On information and belief, Defendant Sorger received $1.6 million or more from Optelligence, in addition to equity that reached 35%, in consideration for the contribution of his ideas, research and patents.

18. Dr. Sorger intended to deceive Dr. El-Ghazawi and Thinking Lights by the purposeful non-disclosure of his effective withdrawal from Thinking Lights and his parallel, secret 2020 negotiations with GWU and Optelligence. Dr. Sorger was assisted in such non-disclosure and negotiations by Defendants Movahhed and Dalir, both of whom had substantial knowledge of the Thinking Lights business plan and the company's then-ongoing GWU negotiations.

19. Defendants Optelligence, Dr. Dalir and Movahhed have significantly benefited financially as a result of usurping Thinking Lights' corporate opportunity and by causing Dr. Sorger to breach his agreement with Plaintiffs.

## COUNT I
### (Breach of Contract – Against Defendant Sorger)

20. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 19 above as if set forth herein in full.

21. Dr. Sorger and Plaintiffs agreed that Defendant Sorger would contribute his ideas, research and related patents to the parties' Thinking Lights venture.

22. Dr. Sorger refused to comply with that agreement and abandoned the Thinking Lights venture, refusing to continue supplying ideas, research and technological advances to the company and transferring, assigning or licensing many of the photonic and nanophotonic patents pledged to Thinking Lights instead to Optelligence for substantial monetary gain.

23. All conditions precedent to the performance of Defendant Sorger's obligations under the agreement have been satisfied or excused.

24. Dr. Sorger's contribution of his applicable patents to Optelligence, and his work with Optelligence in pursuing essentially the same business plan earlier conceived with Dr. El-Ghazawi, breached this agreement, as a proximate result of which Plaintiffs have been substantially injured in their business and property in an amount of at least $18 million and foreseeable, consequential damages in such further amount as may be proved at trial.

## COUNT II
### (Breach of Fiduciary Duty – Against Defendant Sorger)

25. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 24 above as if set forth herein in full.

26. As an equity member and executive officer of Thinking Lights, Defendant Sorger was subject to fiduciary duties of good faith and loyalty owed to the company. A corporate officer cannot negate the clear fiduciary duty to disclose a corporate opportunity before taking it

for himself and owes the company the utmost good faith and loyalty in the performance of his duties, including the duty not to act adversely to the interests of the corporate entity by serving or acquiring any private interest of his own in antagonism or opposition thereto.

27. Dr. Sorger's failure to contribute any of his ideas, research and related patents to Thinking Lights and pursuit (successful) of a funding and business relationship with Optelligence violated this duty of loyalty by converting, without disclosure or agreement, a substantial corporate opportunity for his individual financial gain.

28. Defendant Sorger's breach of fiduciary duty was knowing, willful, wanton and malicious, such that punitive or exemplary damages to punish him and to deter others from engaging in such egregious conduct, in an amount to be determined by a jury a trial, should in addition be awarded to Thinking Lights.

## COUNT III
### (Fraud – Against Defendant Sorger)

29. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 28 above as if set forth herein in full.

30. Defendant Sorger intentionally concealed and purposefully failed to disclose to Plaintiffs his negotiations and agreements with GWU and Optelligence.

31. Such concealment was a material fact, the non-disclosure of which was intended to lull Dr. El-Ghazawi and Thinking Lights into complacency and on which Plaintiffs relied to their detriment.

32. Plaintiffs did not discover, and even with reasonable diligence could not have discovered, this fraud until they learned of Dr. Sorger's misconduct in or about 2022.

33. Plaintiffs have been injured in their business or property as a proximate result of Dr. Sorger's fraudulent concealment. Defendant Sorger's conduct was knowing, willful, wanton

and malicious, such that punitive or exemplary damages to punish him and to deter others from engaging in such egregious conduct, in an amount to be determined by a jury a trial, should in addition be awarded to Dr. El-Ghazawi and Thinking Lights.

## COUNT IV
**(Intentional Interference with Contract – Against All Defendants Other Than Sorger)**

34. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 33 above as if set forth herein in full.

35. Defendants Optelligence, Dalir and Movahhed knew of Dr. Sorger's agreement with Plaintiffs and intentionally caused Defendant Sorger to breach that agreement.

36. Plaintiffs have been injured in their business or property as a proximate result of Defendants' tortious actions. Defendants' conduct was knowing, willful, wanton and malicious, such that punitive or exemplary damages to punish them and to deter others from engaging in such egregious conduct, in an amount to be determined by a jury a trial, should in addition be awarded to Dr. El-Ghazawi and Thinking Lights.

## COUNT V
**(Intentional Interference with Business Relations – Against All Defendants Other Than Sorger)**

37. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 36 above as if set forth herein in full.

38. Defendants Optelligence, Dr. Dalir and Movahhed knew of Dr. Sorger's agreement with Plaintiffs and their common business expectation at that time of commercializing their photonic and nanophotonic ideas, research and related patents through Thinking Lights. For their own personal financial gain, these Defendants intentionally caused Dr. Sorger to usurp that business expectancy and enter into a comparable financial and operational deal with Optelligence.

39. But for the knowing interference by Defendants Optelligence, Dalir and Movahhed, it is more likely than not that GWU and another venture or institutional investor would have entered into a substantially similar business relationship with Thinking Lights with respect to funding and commercialization of the photonic ideas, research and related patents.

40. Plaintiffs have been injured in their business or property as a proximate result of Defendants' tortious actions. Defendants' conduct was knowing, willful, wanton and malicious, such that punitive or exemplary damages to punish them and to deter others from engaging in such egregious conduct, in an amount to be determined by a jury a trial, should in addition be awarded to Dr. El-Ghazawi and Thinking Lights.

## COUNT VI
### (Civil Conspiracy – Against All Defendants)

41. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 40 above as if set forth herein in full.

42. Defendants Optelligence, Dr. Dalir and Movahhed agreed among themselves, and collectively with Defendant Sorger, to cause Dr. Sorger to evade his agreement with Plaintiffs and to enter into an undisclosed business relationship with Optelligence with respect to funding and commercialization of the photonic ideas, research and related patents in lieu of their contribution by Dr. Sorger to Thinking Lights.

43. The object of Defendants' conspiracy or agreement was tortious and unlawful.

44. Defendants' civil conspiracy has substantially injured Plaintiffs in their business or property in an amount of at least $18 million and foreseeable, consequential damages in such further amount as may be proved at trial.

45. Defendants' tortious conspiracy or agreement was knowing, willful, wanton and malicious, such that such that punitive or exemplary damages to punish them and to deter others

from engaging in such egregious conduct, in an amount to be determined by a jury a trial, should in addition be awarded to Dr. El-Ghazawi and Thinking Lights.

## COUNT VII
**(Uniform Fraudulent Transfer Act/Accounting – Against Defendant Optelligence)**

46. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 45 above as if set forth herein in full.

47. Defendants have been aware of the legal claims by Dr. El-Ghazawi and Thinking Lights against Dr. Sorger and Optelligence for at least one year and have frequently discussed possible settlement with Dr. El-Ghazawi during that time period.

48. Such legal claims constitute Plaintiffs as a "creditor" within the meaning of the Uniform Fraudulent Transfer Act, ("UFTA"), enacted in Virginia at Va. Code § 55.1-400. *et seq.*

49. Plaintiffs are informed, and on that basis allege, that Defendants have recently caused Optelligence to sell or convey many of its assets, or otherwise dispose of a substantial portion of the value of the company, with intent to delay, hinder or defraud creditors, purchasers or other persons, specifically including Dr. El-Ghazawi and Thinking Lights, "of or from what they are or may be lawfully entitled." Such actions are illegal and void as to Plaintiffs under § 55.1-402, which expressly authorizes relief from the courts to avoid such transfers even before judgment is obtained, permitting a creditor to be granted "all the relief with respect to such [assets] to which he would be entitled after obtaining a judgment for the claim for which he may be entitled to recover."

50. Absent equitable UFTA relief, Plaintiffs will be prejudiced and unable as a practical matter to enforce a monetary judgment of this Court, justifying (a) an Order prohibiting Optelligence from further transferring corporate assets pending the conclusion of this lawsuit absent leave of court, and (b) an Order further commanding Optelligence to (i) account for all fi-

nancially material assets of the company, and (ii) reverse and recover any corporate assets disposed of in the two-year period prior to commencement of this case.

WHEREFORE, the above premises considered, Plaintiffs demand (a) judgment of and from Defendants, jointly and severally, in an amount of at least at $18 million together with consequential damages in such further amount as may be proved at trial, plus (b) prejudgment interest for breach of contract at the highest lawful rate since December 2020, (c) an Order requiring Defendants to provide an accounting of all financially material assets of Optelligence and any corporate assets disposed of by Optelligence in the two-year period prior to commencement of this case, (e) punitive damages to punish Defendants and to deter others from engaging in such egregious conduct, in an amount to be determined by a jury a trial, as well as (f) the costs of this action, reasonable attorneys, and such other or further relief as the Court finds appropriate.

PLAINTIFFS DEMAND A TRIAL BY JURY

Respectfully submitted,

By: /s/ Glenn B. Manishin
Glenn B. Manishin (VSB #49029)
PARADIGMSHIFT LAW LLP
11410 Reston Station Blvd., Suite 586
Reston, VA 20190
(202) 256-4600
(877) 666-5111 (fax)
glenn@manishin.com

*Counsel for Plaintiffs*

Dated: December 22, 2023

**Local Civil Rule 7.1(A) Statement**

In accordance with L.C.R. 7.1(A), Plaintiffs hereby disclose that:

1. Plaintiff Thinking Lights, LLC has no parent, subsidiary or affiliate entities (corporate or otherwise) that have issued stock or debt securities to the public and no publicly-held entity (corporate or otherwise) owns 10% or more of its equity. The members of Thinking Lights are Plaintiff Tarek El-Ghazawi and Defendant Volker J. Sorger.

2. For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a), the citizenship of both Thinking Lights and Dr. Tarek El-Ghazawi is Virginia.

/s/ Glenn B. Manishin
Glenn B. Manishin

*Counsel for Plaintiffs*